**In re Anonymous No. 22 D.B. 89**

Disciplinary Board Docket no. 22 D.B. 89.

To the Honorable Chief Justice and Justices of the Supreme Court of Pennsylvania:

SCHILLER, *Member*, March 2, 1994—Pursuant to Rule 208(d)(2)(iii) of the Pennsylvania Rules of Disciplinary Enforcement, the Disciplinary Board of the Supreme Court of Pennsylvania herewith submits its findings and recommendations to your honorable court with respect to the above-captioned petition for discipline.

## I. HISTORY OF PROCEEDINGS

On March 13, 1989, the Pennsylvania Supreme Court, referred the instant matter to the Disciplinary Board pursuant to Rule 214(g) Pa.R.D.E., in light of respondent's conviction for two violations of 75 Pa.C.S. §§3732 and 3742.

The Office of Disciplinary Counsel filed a petition for discipline against respondent on June 24, 1991. The petition alleged that respondent's conduct in a hit-and-run accident in which he committed homicide by vehicle adversely reflected upon his honesty, trustworthiness or fitness as a lawyer, in violation of R.P.C. 8.4(b).

The Supreme Court granted respondent's petition to be transferred to inactive status on July 19, 1991.

Respondent filed an answer to the petition for discipline on July 22, 1991, at which time he raised the

issue of his mental stability at the time of the accident and denied any professional misconduct.

The matter was referred to Hearing Committee [    ], which was chaired by [    ], Esquire, and included members [    ], Esquire, and [    ], Esquire. A hearing on the matter was held on December 23, 1991. On March 3, 1992, the Hearing Committee filed its report and recommended that respondent be suspended from the practice of law for a period of three years, commencing with his release from incarceration.

On March 16, 1992, respondent filed a brief on exceptions to the Hearing Committee report and requested oral argument.

Petitioner filed a brief opposing exceptions on March 24, 1992.

Oral argument on the matter was held before a three member panel of the Disciplinary Board on May 15, 1992.

The matter was adjudicated at the June 18, 1992 meeting of the Disciplinary Board of the Supreme Court of Pennsylvania.

## II. FINDINGS OF FACT

(1) Respondent was born in 1951 and admitted to the Pennsylvania Bar in 1981. He currently maintains no office for the practice of law, having successfully petitioned the Supreme Court in July 1991 for a transfer to inactive status.

(2) On the night of June 11, 1988, respondent was driving his vehicle at a speed in excess of the posted limit when he struck and killed two pedestrians as they attempted to cross the street. One of the pedestrians was thrown a distance of 185 feet from the point of

impact while the other was catapulted a distance of 244 feet, nearly the length of a football field.

(3) After striking the two pedestrians, respondent made no attempt whatsoever to stop, render aid, or even slow down, despite severe and obviously noticeable damage to the front and windshield of his vehicle.

(4) Rather, respondent proceeded to drive through [   ] County and into the State of [   ] abandoning his vehicle only after it was rendered inoperable due to damages sustained in the accident.

(5) Before abandoning his vehicle and walking past a [   ] State Trooper in [   ], respondent removed the license plate from his vehicle.

(6) Upon arrival in [   ], respondent hired a taxi which drove him home, where he proceeded to go to sleep.

(7) The following day, June 12, 1988, respondent sought out advice of his counsel, [A], Esquire.

(8) While walking home, respondent was stopped by Patrolman [B], whom he asked "was the girl killed?"

(9) On or about November 4, 1988, respondent was found guilty on two counts of homicide by vehicle, in violation of 75 Pa.C.S. §3732, and two counts of accidents involving death or personal injury, in violation of 75 Pa.C.S. §3742, after a trial by jury in the Court of Common Pleas of [   ] County. (Pet. exh. B.)

(10) Respondent was sentenced as follows:

(a) On information 3518A counts 1 and 2, respondent received identical consecutive sentences which required him to pay the costs of prosecution and a fine of $500 and to serve 11 1/2 months to 2 1/2 years less one day incarceration in [   ] County Prison; and

(b) On information 3518D, Counts 1 and 2, respondent received identical sentences, the first to be served

concurrently with the sentence for Count 1 of information 3518A, the second to run consecutively to the sentence in Count 1 of information 3518D but concurrently to the sentence in Count 2 of information 3518A. The sentences mandated that respondent pay the costs of prosecution and a $500 fine, and serve 11 1/2 months to 2 1/2 years less one day incarceration in [ ] County Prison. (Pet. exh. C.)

(11) By judgment and memorandum opinion dated June 11, 1990, the Superior Court of Pennsylvania affirmed the conviction with the exception of reversing one conviction for leaving the scene of the accident, on the basis there was only one accident scene to be left. (Exh. P-7.)

(12) From 1980 through 1988, respondent received psychotherapy for "dysthymic disorder," in effect a feeling of low self-esteem coupled with depression. (See answer to petition for discipline and attached letter.)

(13) Respondent testified that he accepts full responsibility for leaving the scene of the accident, and that he has paid his insurance policy limits to the victims' estates. (N.T. 99, 101.)

(14) In 1990, after his sentencing, respondent sent letters of remorse to the victims' families. (N.T. 102-104, exh. R 2-4.)

(15) Numerous members of the bar attested to respondent's reputation for veracity and solid character. (N.T. 26-28, 35-37, 131-135.)

(16) Respondent has never before been the subject of a disciplinary proceeding. (N.T. 82.)

### III. CONCLUSIONS OF LAW

Respondent's reprehensible conduct following the motor vehicle accident in which he struck and killed

two pedestrians, specifically his failure to stop his automobile or render assistance to the two victims, his flight into another jurisdiction, and removal of the incriminating license plate in an attempt to disguise his culpability, constitutes a violation of R.P.C. 8.4(b) because it adversely reflects upon his honesty, trustworthiness, and fitness to practice law.

## IV. DISCUSSION

The issue in the instant proceeding is whether a lawyer's illegal conduct following a motor vehicle accident in which he killed two pedestrians is in violation of the standards of professional conduct expected of members of the Pennsylvania Bar.

The petition for discipline alleged that respondent's conduct following the tragic accident which left two people dead constituted professional misconduct under R.P.C. 8.4(b) because it reflected adversely on his honesty, trustworthiness, or fitness as a lawyer. The comment to Rule 8.4 implies that conduct involving violence, dishonesty, or breaching trust, is included within the scope of the rule. The issue, therefore, becomes whether fleeing the scene of an accident in which one has just committed vehicular homicide and attempting to conceal involvement in the crime by removal of the automobile license plate, constitutes violent, dishonest, or untrustworthy conduct, which is proscribed by Rule 8.4.

The Office of Disciplinary Counsel bears the burden of proving professional misconduct by a preponderance of clear and satisfactory evidence. *Office of Disciplinary Counsel v. Keller,* 509 Pa. 573, 580, 506 A.2d 872, 875 (1986). In this case, petitioner has alleged one unprofessional transgression, namely that respondent's illegal conduct following a motor vehicle accident in

which he tried to conceal his involvement and failed to render assistance to the two women he struck, reflected adversely on his honesty, trustworthiness, or fitness as a lawyer. Respondent's uncontroverted actions prove, clearly and satisfactorily, that he did in fact violate R.P.C. 8.4(b), by failing to fulfill his legal obligation to stop at or near the accident scene and render assistance to the other parties, and attempting to conceal his involvement in the collision.

Respondent has never denied his conduct, but rather has sought to excuse it by making reference to his long term treatment for depression. Although "[p]sychiatric disorder is an appropriate consideration as a mitigating factor in a disciplinary proceeding," *(Office of Disciplinary Counsel v. Braun,* 520 Pa. 157, 161, 553 A.2d 894, 895 (1989)), we are not convinced that respondent has fulfilled his duty of establishing sufficient causal connection between his depression and the egregious conduct following the accident. The expert testimony presented by respondent's witnesses did in fact establish that respondent has at various times of his life suffered from low self-esteem and mild depression. However, his "psychiatric condition" was in no way so crippling in nature, that it rendered him helpless in distinguishing right from wrong, and we are unable to accept his claim that poor self-esteem and mild depression led him to engage in the illegal conduct which followed the accident. We are, furthermore, incredulous that respondent was in denial that he had been involved in an accident when he had the presence of mind to flee the scene, cross the state line, remove and discard his license plate, and inquire upon confrontation if the pedestrian had been killed.

We are, therefore, left with the case of an attorney with a previously unblemished disciplinary record and

one violation of R.P.C. 8.4(b). We are mindful that although respondent's conduct is offensive and warrants a strict sanction, punishment is not the primary purpose of attorney discipline in Pennsylvania. *Office of Disciplinary Counsel v. Lucarini,* 504 Pa. 271, 280-281, 472 A.2d 186, 190, 191 (1983).

Nevertheless, we have come to the conclusion that a lengthy suspension from the practice of law will best serve the interests of both the public and the bar. See *Office of Disciplinary Counsel v. Stern,* 515 Pa. 68, 526 A.2d 1180 (1987). We base this conclusion on a number of facts.

First and foremost, of course, is the nature of respondent's misconduct. The Professional Conduct Rule violated by respondent proscribes conduct which adversely reflects upon a lawyer's honesty, trustworthiness, or fitness to practice law. Fleeing the scene of an accident and attempting to conceal one's involvement in vehicular homicide obviously reflects adversely upon one's honesty, trustworthiness, and fitness to practice law.

Respondent's actions, however, must be placed within the framework in which they occurred, namely that respondent was involved in a shocking accident and exercised extremely poor judgment as a result of the shock.

Based on the factual circumstances surrounding the case, his remorse, and his lack of prior discipline, we therefore, conclude and recommend that respondent be suspended from the practice of law for a period of four years.

## V. RECOMMENDATION

The Disciplinary Board of the Supreme Court of Pennsylvania respectfully recommends that respondent [    ] be suspended for a period of four years.

It is further recommended that the court direct that respondent pay all the necessary expenses incurred in the investigation and processing of this matter pursuant to Rule 208(g), Pa.R.D.E.

Messrs. Gilardi, Hill, Witherel and Ms. Flaherty dissent and would recommend disbarment. Mr. Friedman dissents and would recommend a three year suspension. Mr. Saltz dissents and would recommend a two year suspension. Mr. Kerns and Dean Carson did not participate in the adjudication.

## DISSENTING OPINION

HILL, *Vice Chairman*—I respectfully dissent from the majority of the board that has recommended that respondent be suspended from the practice of law for a period of four years.

## I. HISTORY OF PROCEEDINGS

On March 13, 1989, the Pennsylvania Supreme Court, referred the instant matter to the Disciplinary Board pursuant to Rule 214(g) Pa.R.D.E., in light of respondent's conviction for two violations of 75 Pa.C.S. §§3732 and 3742.

The Office of Disciplinary Counsel filed a petition for discipline against respondent on June 24, 1991. The petition alleged that respondent's conduct in a hit-and-run accident in which he committed homicide by vehicle adversely reflected upon his honesty, trustworthiness or fitness as a lawyer, in violation of R.P.C. 8.4(b).

The Supreme Court granted respondent's petition to be transferred to inactive status on July 19, 1991.

Respondent filed an answer to the petition for discipline on July 22, 1991, at which time he raised the

issue of his mental stability at the time of the accident and denied any professional misconduct.

The matter was referred to Hearing Committee [    ], which was chaired by [    ], Esquire, and included members [    ], Esquire, and [    ], Esquire. A hearing on the matter was held on December 23, 1991. On March 3, 1992, the Hearing Committee filed its report and recommended that respondent be suspended from the practice of law for a period of three years, commencing with his release from incarceration.

On March 16, 1992, respondent filed a brief on exceptions to the Hearing Committee report and requested oral argument.

Petitioner filed a brief opposing exceptions on March 24, 1992.

Oral argument on the matter was held before a three member panel of the Disciplinary Board on May 15, 1992.

The matter was adjudicated at the June 18, 1992 meeting of the Disciplinary Board of the Supreme Court of Pennsylvania.

## II. FINDINGS OF FACT

(1) Respondent was born in 1951 and admitted to the Pennsylvania Bar in 1981. He currently maintains no office for the practice of law, having successfully petitioned the Supreme Court in July 1991 for a transfer to inactive status.

(2) On the night of June 11, 1988, respondent was driving his vehicle at a speed in excess of the posted limit when he struck and killed two pedestrians as they attempted to cross the street. One of the pedestrians was thrown a distance of 185 feet from the point of

impact while the other was catapulted a distance of 244 feet, nearly the length of a football field.

(3) After striking the two pedestrians, respondent made no attempt whatsoever to stop, render aid, or even slow down, despite severe and obviously noticeable damage to the front and windshield of his vehicle.

(4) Rather, respondent proceeded to drive through [    ] County and into the State of [    ], abandoning his vehicle only after it was rendered inoperable due to damages sustained in the accident.

(5) Before abandoning his vehicle and walking past a [    ] State Trooper in [    ], respondent removed the license plate from his vehicle.

(6) Upon arrival in [    ], respondent hired a taxi which drove him home, where he proceeded to go to sleep.

(7) The following day, June 12, 1991, respondent sought out advice of his counsel, [A], Esquire.

(8) While walking home, respondent was stopped by Patrolman [B], whom he asked "was the girl killed?"

(9) On or about November 4, 1988, respondent was found guilty on two counts of homicide by vehicle, in violation of 75 Pa.C.S. §3732, and two counts of accidents involving death or personal injury, in violation of 75 Pa.C.S. §3742, after a trial by jury in the Court of Common Pleas of [    ] County. (Pet. exh. B.)

(10) Respondent was sentenced as follows:

(a) On information 3518A Counts 1 and 2, respondent received identical consecutive sentences which required him to pay the costs of prosecution and a fine of $500 and to serve 11 1/2 months to 2 1/2 years less one day incarceration in [    ] County Prison; and

(b) On information 3518D, Counts 1 and 2, respondent received identical sentences, the first to be served con-

currently with the sentence for Count 1 of information 3518A, the second to run consecutively to the sentence in Count 1 of information 3518D but concurrently to the sentence in Count 2 of information 3518A. The sentences mandated that respondent pay the costs of prosecution and a $500 fine, and serve 11 1/2 months to 2 1/2 years less one day incarceration in [    ] County Prison. (Pet. exh. C.)

(11) By judgment and memorandum opinion dated June 11, 1990, the Superior Court of Pennsylvania affirmed the conviction with the exception of reversing one conviction for leaving the scene of the accident, on the basis there was only one accident scene to be left. (Exh. P-7.)

(12) From 1980 through 1988, respondent received psychotherapy for "dysthymic disorder," in effect a feeling of low self-esteem coupled with depression. (See answer to petition for discipline and attached letters.)

(13) Respondent testified that he accepts full responsibility for leaving the scene of the accident, and that he has paid his insurance policy limits to the victims' estates. (N.T. 99, 101.)

(14) In 1990, after his sentencing, respondent sent letters of remorse to the victims' families. (N.T. 102-104, exh. R 2-4.)

(15) Numerous members of the bar attested to respondent's reputation for veracity and solid character. (N.T. 26-28, 35-37, 131-135.)

(16) Respondent has never before been the subject of a disciplinary proceeding. (N.T. 82.)

### III. CONCLUSIONS OF LAW

Respondent's reprehensible conduct following the motor vehicle accident in which he struck and killed

two pedestrians, specifically his failure to stop his automobile or render assistance to the two victims, his flight into another jurisdiction, and removal of the incriminating license plate in an attempt to disguise his culpability, constitutes a violation of R.P.C. 8.4(b), because it adversely reflects upon his honesty, trustworthiness, and fitness to practice law.

## IV. DISCUSSION

Respondent's egregious conduct following the motor vehicle accident in which he killed two pedestrians is so morally offensive and contrary to the ideals of the legal system that we have no choice but to recommend that he be disbarred.

On the night of June 11, 1988, respondent was involved in a tragic motor vehicle accident in which he struck and killed two pedestrians as they attempted to cross the street. The incident was very unfortunate, and we want to clarify that we are not disciplining respondent solely based on his participation in the vehicular collision. Rather, it is respondent's conduct following the accident which provides the foundation for our recommendation of disbarment.

Following the collision, respondent failed to stop his vehicle and render assistance to the pedestrians, in violation of Pennsylvania law. Respondent's conduct is inexcusable; the extensive damage to the front and windshield of his car and his query to the arresting police officer ("was the girl killed?") both prove that he was well aware his automobile had struck a person, yet he failed to stop. After failing to stop, respondent attempted to distance both himself and his incriminating license plate from the accident by fleeing the jurisdiction and removing the tag from his vehicle.

Such conduct should not be tolerated by this board. When respondent was admitted to the Pennsylvania Bar in 1981, he took an oath which made him an officer of the court. As an attorney, he was charged with a duty to maintain and obey the laws of this Commonwealth. Respondent's actions on the night of June 11, 1988 made a mockery of the laws he had sworn to uphold.

"Where one who has sworn to uphold the law actively breaches it, his fitness to practice is unquestionably destroyed.... We cannot condone such conduct because it destroys public confidence in the legal profession. An attorney who [has] such disrespect for the law has forfeited his privilege to be numbered as an attorney, and is not competent to represent members of the public or to appear before courts." *Office of Disciplinary Counsel v. Casety,* 511 Pa. 177, 183, 512 A.2d 607, 610 (1986).

The petition for discipline charged that respondent's aforementioned repugnant conduct violated R.P.C. 8.4(b) because it adversely reflected upon his honesty, his trustworthiness, or his fitness to practice law. We find that respondent's conduct adversely reflects upon his honesty, his trustworthiness, and his fitness to practice law, and that the evidence presented to both the Hearing Committee and this board clearly and satisfactorily demonstrates a violation of Professional Conduct Rule 8.4(b). See *Office of Disciplinary Counsel v. Keller,* 509 Pa. 573, 580, 506 A.2d 872, 875 (1986).

We are in absolute agreement with the *Casety* court that flagrant violations of the laws an attorney has sworn to uphold destroys public confidence in the legal system. Indeed, appropriate discipline should always protect the interests of the public and the integrity of the bar. See *Office of Disciplinary Counsel v. Stern,* 515 Pa. 68,

526 A.2d 1180 (1987). We are, therefore, convinced that the only correct disciplinary sanction for an attorney who willfully chooses to violate the laws of this Commonwealth in an attempt to escape legal responsibility is disbarment. We find no mitigating circumstances to deter us from this result for this respondent.

## V. CONCLUSION

Based on the foregoing, I respectfully dissent from the majority of the board's recommendation and recommend that respondent be disbarred from the practice of law.

Board Members Gilardi, Witherel and Flaherty join in this dissenting opinion.

Board Members Friedman and Saltz also dissent. Mr. Friedman would recommend a three year suspension and Mr. Saltz would recommend a two year suspension.

## ORDER

January 23, 1995—Rule to show cause entered by this court on April 12, 1994, is discharged. It is ordered that respondent be and he is suspended from the bar of this Commonwealth for a period of four years, effective as of the date hereof, and he shall comply with all the provisions of Rule 217, Pa.R.D.E. It is further ordered that respondent shall pay costs to the Disciplinary Board pursuant to Rule 208(g), Pa.R.D.E.

Messrs. Justice Papadakos and Castille dissent and would enter an order disbarring respondent.

Mr. Justice Montemuro is sitting by designation.